# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

LEONARD WIMBERLY, JR.,

    Plaintiff,

v.

DEAN BROOME; NURSE GAIL FERRA; and NURSE MARTHA MIDDLETON,

    Defendants.

CIVIL ACTION NO. 6:15-cv-23

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action, as amended, pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. (Docs. 1, 9, 22.) Defendants Dean Broome and Martha Middleton filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 23.) Plaintiff has responded in opposition to the Motion. (Doc. 26.) For the reasons which follow, I **RECOMMEND** that the Court **DENY** Defendants' Motion.

## BACKGROUND[1]

Plaintiff filed this action against Defendants Dean Broome, Gail Ferra, and Martha Middleton on March 4, 2015. (Doc. 1.) Defendant Broome is the Director of the Medical Department at Georgia State Prison ("GSP"), where Plaintiff is incarcerated, and Defendants Ferra and Middleton are nurses at the prison. (Id. at p. 4.) In his original Complaint, Plaintiff alleged that Defendants denied him access to necessary medical care. Specifically, Plaintiff

---

[1] The recited allegations are taken from Plaintiff's Complaint, as amended, (docs. 1, 9, 22), and are accepted as true, as they must be at this stage.

alleged that he has notified all three Defendants since November of 2013 that he has unbearable pain in his right leg, hip, and thigh area, and Defendants have denied him necessary medical care for this serious condition. (Id. at p. 5.)

On September 4, 2015, with permission of the Court, Plaintiff amended his Complaint. (Doc. 9.) Plaintiff reiterated his allegations that Defendants ignored his leg and hip condition despite direct knowledge of his unbearable pain. The Court conducted a frivolity review of Plaintiff's Amended Complaint on December 9, 2015. (Doc. 12.) Therein, the Court found that Plaintiff's Complaint, as amended, stated a claim for relief that Defendants were deliberately indifferent to Plaintiff's serious medical needs. (Id. at pp. 5–6.) Thus, the Complaint and Amended Complaint were served on Defendants. On February 2, 2016, the Court adopted the Report and Recommendation as the opinion of the Court and dismissed Plaintiff's official capacity claims.

On January 27, 2016, Defendant Broome moved to dismiss Plaintiff's Complaint, as amended, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15.) Broome alleged that Plaintiff failed to plead a claim for deliberate indifference. (Id. at pp. 3–6.) Defendant Broome also alleged that he is entitled to qualified immunity. (Id. at pp. 6–7.)

On March 3, 2016, Plaintiff moved to amend his Complaint, (doc. 20), and the Court granted that Motion, in part, on March 4, 2016, (doc. 21). Plaintiff filed his Second Amended Complaint on March 21, 2016. (Doc. 22.) Therein, he reiterates and clarifies his deliberate indifference claims against all Defendants. Id. Given the recent amendment to Plaintiff's Complaint, I recommended that the Court dismiss Broome's first Motion to Dismiss as moot. (Doc. 24.)

In his Second Amended Complaint, Plaintiff alleges that he was born with one leg shorter than the other. (Doc. 22, p. 1.) As a result, Plaintiff has suffered hip pain and other pain, and he must walk with a cane or other walking aid. Id. In the last few years, Plaintiff's condition has deteriorated, resulting in extreme hip pain and other pain while walking. Id. Plaintiff has seen Defendants Middleton and Ferra, nurses at GSP, at the prison's medical unit several times. Id. However, Middleton and Ferra refused to evaluate Plaintiff or provide him with medical treatment. Id. Rather, Ferra and Middleton told Plaintiff to quit complaining and that there is nothing wrong with his hip. Id. Middleton told Plaintiff that his pain is "nothing but the weather changing." Id.

After Plaintiff's complaints of pain were ignored for approximately a year, he sought relief through the prison's grievance system. (Id. at p. 2.) The Warden of GSP denied his initial grievance on October 17, 2014. Id. Plaintiff appealed that denial on October 20, 2014. Id. Then, on November 4, 2014, Defendants Ferra and Middleton called Plaintiff into the medical unit. Id. They informed him that he should drop his grievance because he was scheduled to see a medical specialist at Augusta State Medical Prison ("ASMP"). Id. Plaintiff declined to drop his grievance.

On December 1, 2014, an orthopedist at ASMP evaluated Plaintiff. Id. ASMP staff also conducted a Magnetic Resonance Image ("MRI") and x-ray of Plaintiff's hip. Id. The orthopedist prescribed Plaintiff to receive "'urgent' hip reconstructive/replacement surgery." Id. However, a year and a half later, Plaintiff has still not received this surgery. Id. Plaintiff has been denied the surgery because Defendant Broome, the medical director at GSP, "says hip replacement surgery is too expensive for someone serving a life sentence." Id. On or about January 10, 2014, Plaintiff was diagnosed with "avascular necrosis" and was again prescribed

"urgent" hip replacement surgery.  Id.  Plaintiff states that Defendant Broome has refused his request to undergo the prescribed surgery at least three times.  Id.  Again, Plaintiff alleges that Broome has based this denial not on medical judgment but as a matter of "non-medical considerations."  Id.  Plaintiff seeks injunctive relief, as well as compensatory damages and punitive damages, to remedy the alleged violations of his constitutional rights.  Id.

On March 29, 2016, Defendants Broome and Middleton moved to dismiss all claims against them asserted in Plaintiff's Second Amended Complaint.  (Doc. 23.)  These Defendants argue that Plaintiff failed to plead that they acted with deliberate indifference and that they are entitled to qualified immunity.  Id.  Plaintiff has filed a Response opposing the Motion to Dismiss.  (Doc. 26.)

## DISCUSSION

### I. Standard of review

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice.  Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

**II.     Whether Plaintiff States a Claim against Defendants Broome and Middleton**

In this action, Plaintiff contends Defendants violated his Eighth Amendment rights to adequate medical treatment. (Docs. 1, 9, 22.) The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326

(11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

Moreover, a difference in opinion between the prison's medical staff and the prisoner as to diagnosis or course of treatment does not amount to a claim under the Constitution. Harris, 941 F.2d at 1505 (citation omitted). Only when deliberate indifference to an inmate's serious medical needs is demonstrated to be "repugnant to the conscience of mankind" or offensive to "evolving standards of decency" will it give rise to a valid claim of mistreatment under the Eighth Amendment. Id.

### A. Whether Plaintiff States a Claim for Relief Against Defendant Broome

In their recent Motion to Dismiss, Defendants Broome and Middleton do not contest that Plaintiff had a serious medical need. They also make no arguments as to the element of causation. Rather, they focus on the "subjective prong" and argue that Plaintiff's Complaint fails to allege that they acted with deliberate indifference. (Doc. 23-1, p. 6.) As to Broome

specifically, Defendants allege that Plaintiff has made "very vague claims" and that he has "merely alleged that Dr. Broome and the orthopedist at Augusta State Medical Prison had different opinions over [Plaintiff's] course of treatment[.]" Id.

Defendants' arguments border on frivolity. Accepting Plaintiff's allegations as true, as the Court must at this stage, Broome does not merely have a difference of medical opinion with the orthopedist at ASMP. Rather, Broome has refused Plaintiff prescribed medical treatment based solely on the cost of the treatment and Plaintiff's life sentence. (Doc. 22, pp. 1–2.) Issues of funding "cannot justify an unconstitutional lack of competent medical care or treatment of inmates." Anderson v. City of Atlanta, 778 F.2d 678, 688 n.14 (11th Cir. 1985); see also Vasquez v. Rogers, No. CIV A 5:07-CV-366 HL, 2008 WL 248479, at *1 (M.D. Ga. Jan. 28, 2008) ("Thus, if [plaintiff] can show that he had a serious medical need for which a CAT-scan was a necessary medical procedure, and that Prison Health Services refused to provide the procedure because of a policy of refusing medical treatments because of cost, he might be able to maintain a claim against Prison Health Services."); Allen v. Burnside, No. CIV.A. 506CV151CAR, 2007 WL 2904018, at *7 (M.D. Ga. Sept. 28, 2007) ("financial concerns are not a justifiable reason to withhold treatment"). As this Court has explained, "[t]he Eleventh Circuit has rejected the idea that 'financial considerations must be considered in determining the reasonableness' of inmates' medical care to the extent that such a rationale could ever be used by so-called 'poor states' to deny a prisoner the minimally adequate care to which he or she is entitled.'" Gonzalez v. Ferrell, 5:08-cv-43, 2008 WL 4345161, at *3 (S.D. Ga. Sept. 23, 2008) (quoting Harris, 941 F.2d at 1505). Even if Broome intends to eventually allow Plaintiff to undergo the surgery, Plaintiff has already suffered a delay in his prescribed surgery of approximately nineteen months. "Cost is not a factor which can justify the lack of timely

medical treatment for [a serious medical condition]." Fields v. Corizon Health, Inc., 490 F. App'x 174, 185 (11th Cir. 2012). Consequently, Broome's alleged cost-based refusal to follow the ASMP orthopedist's prescription for Plaintiff to have an urgent operation constitutes deliberate indifference.

Defendants contend that Broome's refusal to provide Plaintiff the treatment prescribed by the orthopedist is a "'classic example of a matter for medical judgment.'" (Doc. 23-1, p. 6 (quoting Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995).) This characterization entirely ignores Plaintiff's allegations. As Plaintiff explains in response to Defendant's Motion to Dismiss, "Plaintiff was not sent to [ASMP] for a second opinion but to receive medical evaluations/treatment that officials at [GSP] couldn't provide." (Doc. 26, p. 2.) After receiving that evaluation, Broome did not decide to pursue some alternative treatment. Cf. Wright v. Henderson, No. 5:10-CV-201 MTT, 2012 WL 3066471, at *2 (M.D. Ga. June 29, 2012) ("[Physician's] choice of which hypertension medication to prescribe is an issue of medical judgment."). Rather, Broome allegedly continues to ignore the orthopedist's recommendation and refuses to treat Plaintiff's condition for non-medical reasons. Gonzalez, No. 5:08-CV-43, 2008 WL 4345161, at *3 ("In short, [plaintiff] is not objecting to the level or type of treatment he has received at the prison, but complains that [the physician] will not treat him at all."); see also Monn v. Nields, No. 3:15-CV-703-J-34MCR, 2016 WL 70615, at *5 (M.D. Fla. Jan. 6, 2016) ("Although [physician] asserts that [prisoner plaintiff's] allegations reflect mere negligence or a difference of opinion, that assertion ignores [plaintiff's] specific assertions. . . . Accepting the reasonable inference that [the physician's] decision under these circumstances was not a reasoned medical decision, these allegations are sufficient to state a deliberate indifference claim.").

For all of these reasons, Plaintiff has stated a plausible claim that Broome violated Plaintiff's Eighth Amendment rights by exhibiting deliberate indifference to Plaintiff's serious medical needs. Thus, the Court should **DENY** this portion of Defendants' Motion to Dismiss.

### B.   Whether Plaintiff States a Claim for Relief Against Defendant Middleton

Similar to his claims against Defendant Broome, Plaintiff's claims against Defendant Middleton sound in deliberate indifference, not in negligence or a difference in medical opinion. Defendants argue that "Plaintiff has not alleged any conduct showing that Nurse Middleton acted with 'more than mere negligence.'" (Doc. 23-1, p. 5.) They also argue that Plaintiff has only made "vague allegations" that Middleton "ignored his requests [sic] of hip pain at some unknown time." Id. To the contrary, according to Plaintiff, Middleton "ignored" his complaints of "unbearable" hip pain "for about a year", which led Plaintiff to file a grievance on September 16, 2014. (Doc. 22, pp. 1–2.) In the year before he filed that grievance, Plaintiff was called into medical "several times" to see Middleton and Defendant Nurse Ferra regarding his "very obvious" hip pain. (Id. at p. 1.) However, despite the open and obvious nature of Plaintiff's injury, Middleton "ignored" his complaints and refused to provide Plaintiff any reasonable evaluations or other treatment. Id. Rather, she told him that his pain was due to the weather and had him escorted out of the medical unit. Id. It was not until November of 2014, after Plaintiff filed an appeal of the denial of his grievance, that Middleton and Ferra scheduled Plaintiff for an appointment with an orthopedist. (Id. at p. 2.)

Delaying treatment for serious and painful injuries has been "clearly recognized as rising to the level of a constitutional claim." Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citations omitted). On claims of delay, the Court should consider "(1) the seriousness of the

9

medical need; (2) whether the delay worsened the medical condition; [2] and (3) the reason for the delay." Goebert, 510 F.3d at 1327. Here, Plaintiff alleges a quite serious medical condition which causes him unbearable and obvious pain. Despite these complaints, Middleton refused to evaluate or treat Plaintiff for approximately a year. According to Plaintiff, he suffered increased pain and his condition worsened during the delay in his treatment. Moreover, Middleton did not provide him any reason for her delay in evaluating or treating him but instead ignored his complaints. Horn v. Jones, No. 14-20341-CIV, 2015 WL 3607012, at *6 (S.D. Fla. May 8, 2015) (denying motion to dismiss based on nineteen-month delay in inmate's hip removal surgery).

Defendants argue that Plaintiff "has not alleged that Nurse Middleton knew that he was diagnosed with avascular necrosis, knew of the results of the December 2014 MRI, or knew that he was allegedly prescribed hip surgery, nor has Plaintiff alleged that Nurse Middleton had any medical involvement with Plaintiff after the December 2014 MRI." (Doc. 23-1, p. 5.) This line of reasoning ignores Plaintiff's allegations that, for approximately a year before scheduling the MRI, Middleton disregarded Plaintiff's repeated and serious complaints of hip pain. To the extent that Defendants argue that Middleton did not know of the seriousness of Plaintiff's injury before December 2014, the Court should reject that argument. Again, Plaintiff alleges Middleton repeatedly refused to evaluate his hip or have him referred for an examination. Thus, based on Plaintiff's allegations, Middleton's supposed lack of information regarding Plaintiff's condition can be attributed to her refusal to gather that information. Middleton cannot simply ignore a

---

[2] At least one court in this Circuit has noted that proof of the second element of deliberate indifference (that the defendant disregarded the plaintiff's serious medical need) "overlaps" with the causation element, so that "[t]he question [becomes] whether the delay worsened the plaintiff's condition." Dittmer v. Bradshaw, No. 12–81309–CV, 2015 WL 471371, at *5 (S.D. Fla. Feb.4, 2015). At this early stage, Defendants have not challenged the causation element of Plaintiff's claims. Thus, at this time, the Court need not determine the level of specificity required to properly plead causation.

prisoner's obvious medical condition and then later use her ignorance to argue that she was not aware of the seriousness of the prisoner's condition. The Constitution requires more of prison medical providers.

Consequently, Plaintiff states a plausible claim of deliberate indifference against Defendant Middleton as well. Thus, the Court should **DENY** this portion of Defendants' Motion.

### III. Whether Qualified Immunity Shields Defendants Broome and Middleton at This Stage

Defendants Broome and Middleton both invoke the doctrine of qualified immunity in their Motion to Dismiss. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation[.]" Lee, 284 F.3d at 1194. "Qualified immunity should be applied at the earliest possible stage of litigation, and it is therefore appropriate to decide its applicability on a motion to dismiss. Often however, this is not possible, and for this reason it is more typically addressed at summary judgment." Horn, No. 14-20341-CIV, 2015 WL 3607012, at *6; see also Marshall v. Fla. Dep't of Corr., No. 10–20101–cv, 2011 WL 1303213, at *4 (S.D. Fla. March 31, 2011) ("[W]here it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation*.") (emphasis in original) (citation omitted).

To receive qualified immunity, Defendants must first establish that they were acting within their discretionary authority during the events in question. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Here, Plaintiff does not contest this issue, and it appears that Broome and Middleton were acting within their respective discretionary authorities when making decisions relevant to Plaintiff's medical treatment. Thus, the burden shifts to Plaintiff to show that Broome and Middleton are not entitled to qualified immunity. Id. at 1358. To make this showing Plaintiff must first establish the violation of a constitutional right on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001); Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). As explained in Section II above, Plaintiff has alleged conduct by Broome and Middleton that, if proven true, plausibly establishes a violation of Plaintiff's Eighth Amendment rights. Consequently, his Complaint satisfies the first qualified immunity prong.

Having alleged a constitutional violation, Plaintiff must next demonstrate that the constitutional right was clearly established at the time of the alleged misconduct. Saucier, 533 U.S. at 200.[3] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999). "The 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law." Coweta Cty., 21 F.3d at 393 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Viewed most generally, Plaintiff alleges that Defendants Broome and Middleton violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. It has been well established for at least forty years that deliberate indifference to a prisoner's

---

[3] The Supreme Court has clarified, however, that courts need not analyze these qualified immunity steps sequentially. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

serious illness or injury constitutes cruel and unusual punishment, in violation of Eighth Amendment. Estelle v. Gamble, 429 U.S. 97 (1976). More specifically, Plaintiff alleges that Defendants have delayed and (at least as to Broome, continue to delay) the treatment which has been prescribed to treat his serious and painful hip condition. The Eleventh Circuit has long held that "delay in treatment of serious and painful injuries" rises to the level of a constitutional claim. Coweta Cty., 21 F.3d at 393. However, "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Id. at 394.

As set forth above, Plaintiff has alleged a painful, debilitating, and worsening hip condition. Moreover, an orthopedist has prescribed "urgent" surgery for this condition. Thus, the nature of Plaintiff's injury, as alleged, is quite serious. As to Defendant Broome, he has already delayed Plaintiff's treatment for at least nineteen months (when measured from the time the orthopedist prescribed Plaintiff hip surgery). On the facts at hand, the only "reason for the delay" is the cost of the surgery. The Eleventh Circuit issued a number of decisions before the events in question that would put a reasonable prison medical director on notice that he violates an inmate's Eighth Amendment rights by substantially delaying or denying the inmate necessary medical care for nonmedical reasons, including cost savings. See, e.g., Farrow v. West, 320 F.3d 1235, 1246–47 (11th Cir. 2003) (fifteen month delay in providing prisoner needed dentures, which caused him pain, bleeding and swollen gums and weight loss, raised jury question whether doctor was deliberately indifferent toward prisoner's serious medical need); Fields, 490 F. App'x at 185 ("[C]ost is not a factor which can justify the lack of timely medical treatment for [a serious medical need].") (citing Ancata v. Prison Health Servs., 769 F.2d 700, 705 (11th Cir. 1985) ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical

13

care or treatment of inmates.")); Coweta Cty., 21 F.3d at 394 ("Under the clearly established legal norms, a reasonable sheriff would have known that delaying prescribed treatment for a serious medical need for several weeks for a nonmedical reason may violate an inmate's constitutional rights."); see also Horn, No. 14-20341-CIV, 2015 WL 3607012, at *6 (denying qualified immunity on claim that doctor delayed prisoner's hip surgery for nineteen months). These cases, and others, defined the contours of deliberate indifference to medical needs with sufficient particularity to put Broome on notice of the unlawfulness of his alleged conduct.

As to Middleton, Plaintiff alleges that she ignored his condition and failed to evaluate him or provide him any treatment for over a year. Long before Middleton allegedly refused to evaluate Plaintiff for this extended period, "the law was clearly established that several weeks was too long to fail to properly respond to [an inmate's serious] medical need." Coweta Cty., 21 F.3d at 394. "The law was also clearly established that the right to medical care may include diagnostic tests known to be necessary, not just medicinal and surgical care." Id. (citing H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086 (11th Cir. 1986)). As to "the reason for the delay," Middleton apparently never offered any explanation for her refusal to evaluate Plaintiff. Over twenty years ago, the Eleventh Circuit held that "it was clear that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition." Id. Thus, a reasonable nurse in Middleton's position would have known that she violated Plaintiff's Eighth Amendment rights by delaying Plaintiff's provision of medical care in the circumstances he alleges.

Consequently, the Court should **DENY** this portion of Defendants' Motion, as these Defendants are not entitled to the dismissal of Plaintiff's claims against them on the basis of qualified immunity.

## CONCLUSION

For all of the above stated reasons, I **RECOMMEND** that the Court **DENY** Defendants Broome and Middleton's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 23.)

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 16th day of June, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA