IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

LEONARD WIMBERLY, JR.,

    Plaintiff,

v.

DEAN BROOME; GAIL FERRA; and
NURSE MARTHA MIDDLETON,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-23

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the Court are Defendants' Motions for Summary Judgment. (Docs. 64, 68.) Plaintiff filed Responses, (docs. 72, 73), and Defendant Ferra filed a Reply, (doc. 74). For the reasons and in the manner set forth below, I **RECOMMEND** that the Court **DISMISS AS MOOT IN PART** and **DENY IN PART** Defendants' Motions for Summary Judgment. The Court should **DISMISS AS MOOT** the portions of Defendants' Motions addressing Plaintiff's requests for injunctive relief and **DENY** all other portions of the Motions. Additionally, given the mootness of Plaintiff's claims for injunctive relief, the Court should **DISMISS** those claims **WITHOUT PREJUDICE**.

## BACKGROUND[1]

Plaintiff was born with one leg shorter than the other. (Doc. 22, p. 1.) As a result of this condition, Plaintiff requires a cane, an orthotic, or other walking aid. (Id.; Doc. 64-5, p. 4.) In

---

[1] The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. See Peppers v. Cobb Cty., 835 F.3d 1289, 1295 (11th Cir. 2016). The Court recognizes that Defendants' version of events differs from Plaintiff's in several key areas. For example, Defendants state that they never told Plaintiff his surgery could not be performed because it was too expensive, and Defendants Middleton and Ferra assert that they never told Plaintiff to stop filing out sick calls because there was nothing wrong with his leg or to drop his grievance. (Docs. 64-4, 64-16, 68-2.) These factual disputes are matters for a jury to decide.

more recent years, Plaintiff's condition has deteriorated such that he experiences "extreme pain" in his hip and lower back during normal, daily activities including walking. (Doc. 22, p. 1.) Sometime in late 2014, Plaintiff developed avascular necrosis. (Doc. 64-6, p. 14; Doc. 64-7, pp. 4, 6–7, 9–11.) After a convoluted three to four years of medical treatment, Plaintiff ultimately received hip replacement surgery on April 25, 2017, and May 3, 2017. (Doc. 73-1, p. 2.)

Georgia State Prison's ("GSP") medical department does not offer orthopedic services. (Doc. 64-4, p. 2.) Any request for specialized services not offered at GSP must go through the Georgia Department of Corrections' Utilization Management Department. (Doc. 64-2, p. 1.) The requesting medical provider must file a Medical Consult Request with Utilization Management who will then approve or deny the Request and schedule the time, place, and manner of the requested medical service. (Id. at p. 2.)

Beginning in May 2013, Plaintiff notified GSP medical staff that he was having issues with the asymmetry in his legs. (Doc. 64-5, p. 2.) After various rounds of physical therapy, prescribed orthotics, and other pain relief measures, Plaintiff's right hip was x-rayed on December 10, 2013. (Doc. 64-4, p.4; Doc. 64-5, p.7.) Plaintiff also began writing letters to Defendant Broome about the pain in his hip during this time. (Doc. 64-17, pp. 11–12.)

Despite continuing to complain of significant pain in his right hip, Plaintiff's treatment regimen stayed the same throughout 2014—physical therapy, orthotics, pain medication, and a cane. (Doc. 64-5, p. 9; Doc. 64-6, pp. 2, 5, 7.) Plaintiff alleges that whenever Defendants Ferra or Middleton conducted his examinations, they would "disregard [his] situation completely and tell [him] there's nothing wrong with [him]." (Doc. 64-17, p. 19.) Their examinations frequently consisted of visual inspections only and a request for Plaintiff to, "Please stop filling out sick calls. There's nothing wrong with your hip, Wimberly." (Id. at pp. 17–19.)

2

After filing and appealing a grievance regarding his lack of treatment, Plaintiff received another x-ray of his right hip on October 29, 2014. (Doc. 22, p. 2; Doc. 64-6, pp. 11-14.) Plaintiff's x-ray results were returned on November 4, 2014, and raised concerns regarding avascular necrosis. (Doc. 64-6, p. 14.) That same day, Plaintiff alleges Defendant Ferra, in the presence of Defendant Middleton, attempted to convince Plaintiff to "drop his medical grievance because they were now going to provide him with proper medical care." (Doc. 58, p. 2; Doc. 73, pp. 1–2.) Plaintiff refused.

An MRI of Plaintiff's right hip was conducted on December 1, 2014, which again raised concerns for "longstanding [avascular necrosis]." (Doc. 64-7, p. 9.) Plaintiff claims that the evaluating surgeon also "prescribed [Plaintiff] to have urgent . . . [hip] replacement surgery." (Doc. 22, p. 2.) Despite this "urgent" finding, Plaintiff did not see another specialist until March 24, 2015. (Doc. 64-7, pp. 2–3, 8.) This specialist again referred Plaintiff for treatment of his right hip "ASAP." (Id. at p. 8.)

From that point forward until April 25, 2017, Plaintiff embarked on an astonishing medical saga of medical exams, Consult Requests, preparation for hip replacement surgery four separate times, and cancellation of all four surgeries. Several of these surgeries were inexplicably cancelled, and two were cancelled the day before surgery was scheduled to occur. (Doc. 64-10, pp. 10–11; Doc. 64-11, pp. 1–2.) Throughout this period, Plaintiff suffered extreme pain, but his treatment regimen again remained unchanged—physical therapy, orthotics, pain medication, and a cane.

Plaintiff also alleges that in October 2015, he "had a little meeting" with Defendant Broome wherein Defendant Broome told Plaintiff, "Hip replacement surgery is too expensive for someone serving a life sentence." (Doc. 64-17, pp. 13, 15.) During that same encounter, Nurse

3

Tolbert reportedly told Plaintiff that "GSP does not have the money or resources to do [your] surgery." (Id. at pp. 13–14.) At another juncture Plaintiff asked Physician Assistant Hall, who placed Consult Requests for three of Plaintiff's surgeries, why his operations were being cancelled. She replied, "You've got to take that up with Dr. Broome, Wimberly. I have no control over that. Dr. Broome is the one who orders the surgery. He's the one that keep[s] denying it." (Id. at p. 17.)

Plaintiff filed this action on March 4, 2015, and filed his superseding Second Amended Complaint on March 21, 2016. (Docs. 1, 22.) Plaintiff seeks injunctive, declaratory, and monetary relief in his Second Amended Complaint. (Doc. 22, p. 2.) Defendants Broome and Middleton filed a Motion for Summary Judgment on April 18, 2017, and Defendant Ferra filed a Motion for Summary Judgment on May 19, 2017. (Docs. 64, 68.) Plaintiff filed Responses, (docs. 72, 73), and Defendant Ferra filed a Reply, (doc. 74).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co.

v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

## DISCUSSION

### I. Deliberate Indifference to Medical Needs

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to "ensure that inmates receive adequate food, clothing shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. In order to prevail on a deliberate indifference claim, a prisoner must: (1) satisfy the objective component by showing a serious medical need; (2) satisfy the subjective component by

showing a defendant's deliberate indifference to that need; and (3) show that the injury was caused by the defendant's indifference. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

As to the first, objective component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187). In either situation, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1246 (quoting Farmer, 511 U.S. at 834).

Under the second, subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[2]

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons"

---

[2] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory. Compare Goebert, 510 F.3d at 1327, with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). In Melton, the Eleventh Circuit found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Even so, at least two Eleventh Circuit unpublished cases post-Melton have continued to use the "gross negligence" standard. See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford, 2017 WL 2874517 (11th Cir. July 6, 2017). However, because the Eleventh Circuit explicitly addressed this issue in the Melton case, this Court will apply the "more than mere negligence" standard.

6

or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted). In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers "the reason for the delay and the nature of the medical need." Farrow, 320 F.3d at 1246 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). When a claim turns on the quality of treatment provided, however, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 104. Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

Defendants do not contest the seriousness of Plaintiff's medical need or their knowledge of Plaintiff's need.[3] Accordingly, the Court will limit its analysis to whether Defendants disregarded Plaintiff's medical needs with conduct that is more than mere negligence.

### A.   Defendant Broome

Defendant Broome argues that he "has worked diligently to ensure that [Plaintiff] received appropriate care for his hip" and that any delays in the surgery date were "due to circumstances beyond Dr. Broome's control," specifically, his inability to expedite the Utilization Management process. (Doc. 64-1, p. 16.) However, Plaintiff argues that, to the contrary, Defendant Broome has delayed his surgery because it is too costly "for someone serving a life sentence." (Doc. 64-17, p. 15.) The motivation for the delay, whether the delay

---

[3] Defendant Ferra stipulates to this issue only for purposes of her Summary Judgment Motion. (Doc. 68, p. 12.)

7

was beyond Defendant Broome's control, and whether Defendant Broome acted diligently or with deliberate indifference, are disputes of material facts that the record does not clarify.

For example, Defendant Broome claims that, as a sign of his diligence, he supervised "other advanced medical providers in writing consults" to schedule Plaintiff's surgery after the December 1, 2014 MRI confirmed the necessity. (Doc. 64-1, p. 16.) However, there are significant delays and inconsistencies with these Consult Requests. The record reveals that, following the MRI, a Consult Request for surgery was not entered until over five months later on May 14, 2015.[4] (Doc. 64-7, pp. 11–13.) Indeed, Defendant Broome did not even review the MRI report until January 8, 2015.[5] (Id. at p. 9.) Confusingly, the MRI report contains a notation from PA Caraviello indicating that Plaintiff, or perhaps the result of the MRI, was "referred ortho 1-21-15." (Id.) However, there is no record of this Consult Request ever being entered. Also of note, the May 14, 2015 Consult Request is one of only four Requests ever categorized as an "Urgent" Request in the four-year medical record before the Court. (Doc. 64-7, p. 11; Doc. 64-5, p. 1; Doc. 64-9, p. 13; Doc. 64-10, p. 2.)

Despite this urgency, Plaintiff was still not scheduled for surgery by September 2014. (Doc. 64-8, p. 5 (Plaintiff following up with PA Hall regarding surgery date and PA Hall advising Plaintiff that surgery is still pending).) Indeed, the record contains no Consult Request or any other documentation for a surgery having ever been scheduled until an October 14, 2015 Medical Encounter Form indicated that Plaintiff's surgery for later that month was "cancelled b/c no available surgeon at ASMP." (Id. at p. 9.) Interestingly, the follow-up Consult Request

---

[4] Plaintiff's March 24, 2015, appointment with Dr. Samuel Macomson was scheduled from a Consult Request entered on November 4, 2014, a month before the MRI results were available, and in response to a previous specialist recommending that Plaintiff see a joint specialist. (Doc. 64-7, pp. 2–3, 8.)

[5] Defendant Broome states in his affidavit that he reviewed these results on December 8, 2015, (doc. 64-4, p. 8), but the date signed below Defendant Broome's signature clearly states January 8, 2015.

8

entered after this seems to indicate that medical providers have some ability to control the scheduling process with Utilization Management. This Consult Request stated that Plaintiff had an upcoming appointment on November 17th with Dr. Schlatterer at Atlanta Medical Center. (Doc. 64-8, pp. 11–14.) Utilization Management thereafter approved the Request and scheduled Plaintiff for an appointment on November 17, 2015, with Dr. Schlatterer. (Id.)[6]

These Consult Requests are just a few examples of how the record only raises more questions as to the diligence of Defendant Broome's efforts in obtaining surgery. In fact, Defendant Broome's admitted personal involvement in Plaintiff's case—a year after Plaintiff was recommended "urgent" hip replacement surgery—only underscores these inconsistencies. Defendant Broome provides no explanation as to why he waited a year to personally involve himself in Plaintiff's case and why his involvement only lasted for a period of a few months. (Doc. 64-8, pp. 10–12; Doc. 64-9, pp. 13–16; Doc. 64-10, pp. 1–4.) Moreover, according to Plaintiff, Defendant Broome told Plaintiff that his hip surgery was too expensive, and PA Hall stated that Defendant Broome was the one delaying his surgery. (Doc. 64-17, pp. 13, 15, 17.)

Reading these facts, in addition to the fact that Plaintiff ultimately did not receive his "urgent" hip replacement surgery until nearly three years later, in a light most favorable to Plaintiff, a reasonable jury could infer that Defendant Broome intentionally delayed Plaintiff's surgery for cost-related reasons. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference."); see also Fields v. Corizon Health, 490 F. App'x 174, 178 (11th Cir. 2012) ("[C]ost is not a factor which can justify the lack of timely medical treatment for [a serious medical need].").

---

[6] The Court notes that a later Consult Request indicated Plaintiff had an appointment on February 2, 2016, with Dr. Schlatterer, and although Utilization Management approved an appointment for March 1, 2016, it was still with Dr. Schlatterer. (Doc. 64-9, pp. 10–11.)

9

Accordingly, the Court should **DENY** this portion of Defendants Broome and Middleton's Motion for Summary Judgement.

### B. Defendant Middleton

Defendant Middleton contends Plaintiff cannot show she acted with deliberate indifference because she was not working at GSP during the relevant time period, and because "Plaintiff has received extensive care for his hip since 2013." (Doc. 64-1, p. 17.) Plaintiff argues that Defendant Middleton refused to provide him "adequate medical care and/or reasonable evaluations." (Doc. 22, p. 1.) Specifically, Plaintiff alleges that she disregarded his hip injury and warned him to stop filling out sick calls. (Id.)

First, it appears that there is a dispute as to whether Defendant Middleton worked at GSP during the time period Plaintiff claims Defendant Middleton refused to provide him care. Defendant Middleton claims that she worked as a registered nurse for GSP only until September 10, 2013. (Doc. 64-16, p. 1.) However, Plaintiff claims in his deposition that Defendant Middleton's misconduct occurred in 2014. (Doc. 64-17, p. 18.) As further support, Plaintiff provides two of his health services forms that Defendant Middleton responded to in 2014. (Doc. 73-1, pp. 4–5.) Thus, there is a threshold factual dispute as to whether Defendant Middleton was even in a position to provide Plaintiff care during the relevant period.

Second, there is a factual dispute as to the level of care Defendant Middleton provided. Defendant Middleton avers that, although she did not have the authority to give Plaintiff prescriptions, write orders for profiles, or write Consult Requests, she never "den[ied] him medical treatment or . . . access to more advanced medical providers." (Doc. 64-16, p. 2.) Plaintiff claims precisely the opposite; Defendant Middleton not only refused to treat his hip but failed to properly examine it altogether. (Doc. 64-17, pp. 18–19.)

Based on these two conflicting statements, a reasonable jury could infer that Defendant Middleton provided "grossly inadequate care" or "medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, while it is true that Plaintiff did receive some care from other medical providers, it is not apparent in the record before the Court whether Defendant Middleton was responsible for Plaintiff seeing these other medical providers or whether some other nurse recommended Plaintiff to these medical providers. Thus, Plaintiff's medical treatment by other providers has no bearing on Defendant Middleton's liability. See Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual defendant must be judged separately and on the basis of what that person knows.")

Accordingly, the Court should **DENY** this portion of Defendants Broome and Middleton's Motion for Summary Judgment.

### C. Defendant Ferra

Defendant Ferra argues that Plaintiff's claims fail because she provided "appropriate, timely, and responsive care to Plaintiff." (Doc. 68-1, p. 11.) Additionally, Defendant Ferra claims that she "d[oes] not recall" telling Plaintiff to drop his grievance because she would provide him proper medical care or to stop filling out sick calls because there was nothing wrong with his hip or leg. (Doc. 68-2, pp. 6, 8.) Plaintiff again argues the opposite: that Defendant Ferra refused to provide him treatment for his hip until he filed a grievance, and once he filed his grievance, Defendant Ferra attempted to have Plaintiff withdraw it by promising him proper medical care.

Reading the record in the light most favorable to Plaintiff, there is a dispute of material fact as to whether Defendant Ferra provided appropriate treatment for Plaintiff's hip. The

Medical Encounter and Consult Request forms Defendant Ferra filled out consistently diagnosed Plaintiff as only having back pain, even though Plaintiff consistently complained of hip pain to other medical providers prior to seeing Defendant Ferra. Compare (Doc. 64-5, pp. 5, 8–9; Doc. 64-6, p. 5) with (Doc. 68-2, pp. 15–18, 20, 24–25, 28.) Indeed, it is not until November 4, 2014—after Plaintiff filed and appealed his grievance for lack of medical care—that Defendant Ferra mentioned Plaintiff's right hip pain and potential avascular necrosis. On this same date, Plaintiff claims that Defendant Ferra attempted to have him withdraw his grievance because "they were *now* going to provide him with proper medical care." (Doc. 58, p. 2 (emphasis added).) Thus, as the record stands, a reasonable jury could infer that Defendant Ferra provided "grossly inadequate care" or "medical care that is so cursory as to amount to no treatment at all" by refusing to diagnose Plaintiff's hip injury until Plaintiff filed and appealed a grievance. See McElligott, 182 F.3d at 1255–59 (11th Cir. 1999) ("Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances.")

Accordingly, the Court should **DENY** this portion of Defendant Ferra's Motion for Summary Judgment.

## II. Whether Defendants Broome and Middleton are Entitled to Qualified Immunity[7]

Defendants Broome and Middleton argue that, even if Plaintiff states plausible claims for relief against them, they are entitled to qualified immunity as to those claims. (Doc. 64-1, pp. 18–19.) At the outset, the Court notes that it previously addressed and rejected Defendants Broome and Middleton's qualified immunity arguments in great detail. (Doc. 30, pp. 11–14; Doc. 34.) Defendants Broome and Middleton do not provide any new arguments, and accordingly, the Court does not alter its analysis.

---

[7] Defendant Ferra does not raise a qualified immunity defense in her Motion for Summary Judgment.

Indeed, the serious factual disputes discussed above only highlight the fact that Defendants Broome and Middleton are not entitled to qualified immunity at this stage. As stated in the undersigned's previous Report and Recommendation adopted by the Court, Eleventh Circuit case law clearly establishes that it is unconstitutional to delay or deny an inmate necessary medical care for nonmedical reasons. (Docs. 30, 34.) "A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010). The Eleventh Circuit is replete with preexisting law in this area. See, e.g., Farrow, 320 F.3d at 1246–47 (fifteen month delay in providing prisoner needed dentures, which caused him pain, bleeding, swollen gums, and weight loss, raised jury question whether doctor was deliberately indifferent to prisoner's serious medical need); Harris v. Coweta Cty., 21 F.3d 388, 394 (11th Cir. 1994) ("[T]he law was clearly established that several weeks was too long to fail to properly respond to the medical need . . . . [I]t was clear that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition."); cf. Sealey v. Pastrana, 399 F. App'x 548 (11th Cir. 2010) (finding no deliberate indifference where plaintiff failed to provide any evidence that the clinical director, and not the Bureau of Prisons' committee, was responsible for denying his hip surgery).

"Because the 'contours of unreasonable delay in providing treatment for serious medical needs were defined with enough particularity to allow [Defendants] . . . to understand whether [their] actions were unlawful," Defendants Broome and Middleton should not be entitled to immunity. Melton, 841 F.3d at 1207, 1229. Sufficient case law exists to put Defendant Broome on notice that it is unlawful to deny Plaintiff required hip surgery for non-medical reasons, such

as cost. Sufficient case law also exists to notify Defendant Middleton that delaying treatment of Plaintiff's right hip—or even giving him such cursory examinations as to amount to no treatment at all—is unlawful.

Accordingly, the Court should also **DENY** this portion of Defendants Broome and Middleton's Motion for Summary Judgment.

### III. Plaintiff's Injunctive Relief Claims

Article III of the Constitution "extends the jurisdiction of federal courts to only "'Cases' and 'Controversies.'" Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014) (citations omitted). This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations." Id. There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." Harrell v. The Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted). With regard to the mootness strand, the United States Supreme Court has made clear that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted). Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed. Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is

filed.'" Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

Plaintiff notified the Court in his Response to Defendants Broome and Middleton's Motion for Summary Judgement that he received hip replacement surgery on April 25, 2017, and May 3, 2017. (Doc. 73-1, p. 2.) Because Plaintiff has been granted his surgery, the issue of Plaintiff's injunctive relief is now moot. Accordingly, the Court should **DISMISS AS MOOT** the portion of Defendants' Motions for Summary Judgment addressing Plaintiff's requests for injunctive relief. However, given that Plaintiff's injunctive relief claims are now moot, the court should **DISMISS** those claims **WITHOUT PREJUDICE**.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS AS MOOT IN PART** and **DENY IN PART** Defendants' Motions for Summary Judgment. (Docs. 64, 68.) The Court should **DISMISS AS MOOT** the portions of Defendants' Motions addressing Plaintiff's requests for injunctive relief and **DENY** all other portions. The Court should also **DISMISS WITHOUT PREJUDICE** Plaintiff's claims for injunctive relief.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of December, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA