IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

LEONARD WIMBERLY, JR.,

Plaintiff,

v.

CIVIL ACTION NO.: 6:15-cv-23

DEAN BROOME; GAIL FERRA; and
NURSE MARTHA MIDDLETON,

Defendants.

## ORDER

Presently before the Court are Defendants Broome and Ferra's Objections to the Magistrate Judge's Report and Recommendation. (Docs. 76, 77.) After an independent and *de novo* review of the entire record, the undersigned concurs with the December 19, 2017, Report and Recommendation, (doc. 75). Accordingly, the Court **OVERRULES** Defendants' Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation, as supplemented herein, as the opinion of the Court. The Court **DISMISSES AS MOOT IN PART** and **DENIES IN PART** Defendants' Motions for Summary Judgment. (Docs. 64, 68.) The Court **DISMISSES AS MOOT** the portions of Defendants' Motions addressing Plaintiff's requests for injunctive relief and **DENIES** all other portions of the Motions. Additionally, given the mootness of Plaintiff's claims for injunctive relief, the Court **DISMISSES** those claims **WITHOUT PREJUDICE**.

## BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, contending that Defendants were deliberately indifferent to his serious medical needs when they failed to timely provide him with a hip replacement surgery. (Doc. 1.) The Court conducted the requisite frivolity review, (doc. 12), and Defendants Broome and Middleton then filed a Motion to Dismiss, (doc. 23), to which Plaintiff filed a Response, (doc. 26). On June 16, 2016, the Magistrate Judge recommended that the Court deny Defendants Broome and Middleton's Motion to Dismiss, and this Court adopted that Recommendation on July 18, 2016, (doc. 34).[1] Subsequently, Defendants filed a Motion for Summary Judgment, (docs. 64, 68), to which Plaintiff filed Responses, (docs. 72, 73). The Magistrate Judge recommended the Court dismiss as moot in part and deny in part Defendants' Motions for Summary Judgment. (Doc. 75.) In particular, the Magistrate Judge recommended dismissing as moot any issues regarding injunctive relief and denying all other portions of the Motions. (Id.)

## DISCUSSION

Defendants Broome and Ferra filed separate Objections to the Magistrate Judge's recommendation that the Court deny summary judgment. (Docs. 76, 77.) Defendant Broome contends that the Magistrate Judge improperly relied on the evidence to determine that Defendant Broome had deliberately disregarded a serious medical need. (Doc. 76, pp. 1–4.) Defendant Ferra contends that there is insufficient evidence in the record to establish that she was deliberately indifferent to Plaintiff's serious medical need, (doc. 77, pp. 2–6), and insufficient evidence to establish her causal role in Plaintiff's injury, (id. at pp. 7–8). The Court addresses each of these Objections in turn.

---

[1] Defendant Ferra was served at a later date and also filed a Motion to Dismiss, (doc. 49), which this Court denied, (docs. 53, 62).

2

I.  **Whether Defendant Broome Deliberately Disregarded Plaintiff's Serious Medical Need**

Defendant Broome contends that the Magistrate Judge erred in coming to certain conclusions based upon the record. (Doc. 76, p. 1.) Specifically, Defendant Broome contests the Magistrate Judge's conclusions drawn from Defendant Broome entering a Consult Request for surgery "over five months [after the December 1, 2014 MRI] on May 14, 2015," (id. at pp. 1–2 (citing doc. 75, p. 8)), and the treatment Plaintiff received from May to October 2015, (id. at pp. 3–4.)

However, Defendant Broome's Objections only highlight what the Magistrate Judge ultimately determined—that the record, when viewed in the light most favorable to Plaintiff, "only raises more questions as to the diligence of Defendant Broome's efforts in obtaining surgery." (Doc. 75, p. 9.) Defendant Broome argues that, as soon as Plaintiff's December 1, 2014 MRI indicated "longstanding [avascular necrosis]," (doc. 64-7, p. 9), he "was aware that the Plaintiff was going to an orthopedic consult in March 2015," (doc. 75, p. 2), and presumably did not think it necessary to schedule an earlier appointment. Even if this were true, the Consult Request for this appointment indicates that Plaintiff was originally scheduled to see a specialist on December 4, 2014, but Georgia State Prison notified Utilization Management on February 24, 2015, to reschedule the appointment. (Doc. 64-7, p. 3.) No explanation is provided as to why a request to reschedule was not made until two months after the original appointment date and MRI test date, who at Georgia State Prison ordered this rescheduling, or even why it occurred. Indeed, viewing the entirety of the record in the light most favorable to Plaintiff, a reasonable jury could conclude that Dr. Broome created this delay due to the cost of hip replacement surgery.

3

Dr. Broome also claims that the delay from December 2014 to May 2015 was exacerbated by Utilization Management sending Plaintiff to a neurosurgeon instead of an orthopedic specialist. Dr. Broome claims that "upon learning [of this error], Dr. Broome then supervised PA Caraviello in May of 2015 in writing another Consult Request . . . ." (Doc. 76, p. 2.) However, this fact only raises more questions as to Dr. Broome's diligence. Dr. Broome did not submit a Consult Request until two months after Plaintiff saw the wrong specialist—even though that same specialist recommended a referral to "ortho for [right] hip ASAP," (doc. 64-7, p. 8), five months after Plaintiff was recommended for "urgent hip replacement surgery," (doc. 22, p. 2), and nearly seven months after Plaintiff's x-ray results identified possible avascular necrosis, (doc. 64-6, p. 14).[2]

Even setting aside these particular facts and the specific facts contested by Defendants in subpart B of their Response, the entirety of the record reveals that Plaintiff was diagnosed with longstanding avascular necrosis in late 2014. Despite the necessity for urgent surgery, Plaintiff did not receive surgical treatment until nearly three years later. Defendant Broome argues that the delays were due to circumstances beyond his control, and that he worked "diligently to ensure . . . Plaintiff received the appropriate care for his hip . . . ." (Doc. 76, p. 4.)[3] However, despite the numerous Consult Requests submitted "under Dr. Broome's supervision," (id.), only

---

[2] There is also a dispute of fact as to whether Dr. Broome knew Plaintiff was scheduled to see the wrong doctor. Dr. Broome avers that he oversaw all the Consult Requests, and indeed, he signed off on this particular Consult Request. (Doc. 64-7, p. 6.) However, Utilization Management's response to this Consult Request for an "ortho joints" specialist clearly lists Dr. Macomson, the neurosurgeon, as the "provider" when the appointment was made. (Doc. 64-7, p. 2.) Whether Dr. Broome knew Dr. Macomson was a neurosurgeon at the time the appointment was made is not clear from the record.

[3] Dr. Broome also argues that, during this time period, he ensured Plaintiff "was prescribed pain medication . . . [and] received prison profiles to help alleviate his pain," such as a prescription for orthotics, a cane, and a bottom bunk. (Doc. 76, p. 4.) However, in light of Plaintiff's need for hip replacement surgery, a reasonable jury could interpret these actions as "a decision to take an easier but less efficacious course of treatment." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

three were ever categorized as "urgent" following Plaintiff's diagnosis, (doc. 64-7, p. 11; doc. 64-9, p. 13; doc. 64-10, p. 2). Even more telling, the first "urgent" Request was not entered until May 14, 2015—five months after an MRI confirmed longstanding avascular necrosis. The other two "urgent" Requests were not entered until March and April of 2016.

These facts, combined with Plaintiff's claims that Dr. Broome specifically told Plaintiff that surgery was "too expensive for someone serving a life sentence," (doc. 64-17, pp. 13, 15), create a genuine dispute of material fact as to whether Dr. Broome purposely delayed Plaintiff's surgery due to cost. Accordingly, the Court cannot decide as a matter of law that Defendant Broome did not act with "more than mere negligence" during the course of Plaintiff's medical treatment. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

## II. Whether Defendant Ferra Deliberately Disregarded Plaintiff's Serious Medical Need

Defendant Ferra argues that the medical record shows that she did not provide "grossly inadequate care" or "medical care that is so cursory as to amount to no treatment at all." (Doc. 77, p. 2.) Instead, Defendant Ferra argues that she provided appropriate treatment for Plaintiff's hip and that, even if she did not, her actions did not cause or contribute to his injury. (Doc. 77, pp. 2–7.)

However, the record before the Court, with all reasonable inferences drawn in the light most favorable to Plaintiff, only raises more questions as to whether Defendant Ferra acted with more than mere negligence. Plaintiff's medical file shows that, as early as December 2013 to at least March 2014, Plaintiff was diagnosed with hip and back pain. (Doc. 64-5, pp. 5, 8–10; Doc. 64-6, p. 5.) On July 16, 2014, Defendant Ferra's first recorded treatment note indicated that Plaintiff complained of lower back pain. (Doc. 64-6, p. 10.) Defendant Ferra then wrote a Consult Request diagnosing Plaintiff with back pain only. (Doc. 64-6, p. 13.) As a result of this

5

Consult Request, Plaintiff saw Dr. Blackburn on October 29, 2014.[4] Dr. Blackburn stated that Plaintiff has "[right leg] and [right] groin pain . . . groin pain [greater than lower back pain] . . . pain with flexion/extension of [right] hip." (Doc. 64-6, p. 13.) Dr. Blackburn then recommended a "referral to ortho joints and referral of [right] hip prior to lead up clinic." (Doc. 64-6, p. 13.) On this same date, Plaintiff also received an x-ray of his right hip. The results were issued on November 3, 2014, and indicated that the findings are "concerning for avascular necrosis." (Doc. 64-6, p. 14.)

It is the events following this diagnosis and referral that raise more questions as to Defendant Ferra's conduct. At 8:15 a.m. on November 4, 2014, Defendant Ferra wrote in her medical encounter form under the patient statement section, "They told me I have to go to a hip specialist." (Doc. 64-7, p. 1.) Despite this statement and Dr. Blackburn's diagnosis of right leg and hip pain, at 8:30 a.m., Defendant Ferra entered a Consult Request diagnosing Plaintiff with "back pain" only. (Doc. 64-7, p. 8.) However, under "pertinent workup, lab results," Defendant Ferra noted that "x-ray reports are pending" (presumably referring to the October 29, 2014 x-rays) and "MRI: complete destruction [right] hip." (Doc. 64-7, p. 8.) The record is devoid of any other mention of this MRI, when it occurred, who recommended it, or what the results were. Regardless, despite documenting an MRI test indicating complete destruction of the right hip and Dr. Blackburn's diagnosis, Defendant Ferra still indicated that Plaintiff only had back pain.[5] (Doc. 64-7, p. 8.) Then, at 10:05 a.m., Defendant Ferra finally diagnosed Plaintiff with [right

---

[4] From July 2014 until Plaintiff's appointment with Dr. Blackburn, Defendant Ferra apparently interacted with Plaintiff several other times regarding his hip/back pain. She provided various medical notes indicating that she received letters from Plaintiff regarding this issue. (Doc. 68-2, pp. 20, 22.)

[5] Confusing the picture even further, Defendant Ferra's 8:15 a.m. medical encounter form indicates that she "discussed x-ray" with Plaintiff. (Doc. 64-7, p. 1.) This raises an additional question as to whether Defendant Ferra already saw the x-ray report, knew that Plaintiff had possible avascular necrosis, and still diagnosed him as only having back pain.

hip] avascular necrosis in her second Consult Request and, for the first time, indicated in Plaintiff's medical history that he has "long term low back pain and right hip pain." (Doc. 64-7, p. 7.) At 12:45 p.m., Defendant Ferra entered a third Consult Request, again stating in Plaintiff's medical history that he has "long term lower back and right hip pain,", and diagnosed him with "possible avascular necrosis right hip." (Doc. 64-7, p. 6.)

On this same date, Plaintiff claims that he had a meeting with Defendant Ferra wherein she told him to "drop his grievance because they were now going to provide him with proper medical care." (Doc. 58, p. 2.)[6] Furthermore, during this July to November 2014 time period, Plaintiff avers that Defendant Ferra knew of his hip pain and refused to provide appropriate treatment. (Doc. 68-3, p. 19 ("[B]oth [Defendant Ferra and Middleton] look at me and tell me . . . 'Please stop filling out sick calls. There's nothing wrong with your hip, Wimberly.'"); see also Doc. 22, p. 1 ("Plaintiff was called into medical area . . . only to be told 'Wimberly, please stop filling out medical requests because there's nothing wrong with your hip or leg' by Defendant Ferra[]."); Doc. 68-3, p. 21 ("[T]he letters I wrote the other medical director in response to Nurse Ferra[] go back to 8/25/2014 . . . me letting them know about my situation and them refusing me just flat out . . . .").)

This evidence creates a genuine issue of material fact as to whether Defendant Ferra acted with more than mere negligence. As it stands, a reasonable jury could infer that, Defendant Ferra knew of, or at least should have known of, Plaintiff's hip pain and refused to provide proper treatment for such. This is especially true given the affidavit stating that

---

[6] Defendant Ferra claims that nothing in the affidavit by Officer Beal attributes these statements to her. (Doc. 77, p. 6.) However, Officer Beal specifically states that he "escorted Leonard Wimberly to medical area and [saw] Nurse Ferra and a grievance investigator trying to convince Wimberly to drop his grievance because they were now going to provide him with proper medical care." (Doc. 58, p. 2.) At this stage of the litigation, taking all facts in the light most favorable to Plaintiff, a reasonable jury could infer that Defendant Ferra made this statement. This is particularly true as Plaintiff has consistently attributed this statement to Defendant Ferra. (See, e.g., Doc. 73, pp. 1–2; Doc. 22, p. 2.)

7

Defendant Ferra would "now" provide proper treatment and Defendant Ferra suddenly indicating in her Consult Requests Plaintiff's history of long term lower back and right hip pain despite never diagnosing him for such before.

Thus, this difference between back and hip pain is more than a "simple disagreement over terminology." (Doc. 77, p. 2.) It directly implicates whether Defendant Ferra acted with "conduct that is more than mere negligence."[7] Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). At this stage, there are too many discrepancies within the record and too many factual disputes for the Court to decide, as a matter of law, that Defendant Ferra did not act with deliberate indifference to Plaintiff's serious medical needs. Defendant Ferra has not met her burden "by 'showing'—that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986).

For these same reasons, the Court finds Defendant Ferra's objections regarding causation to be without merit. The discrepancy in the record as to when Defendant Ferra knew of Plaintiff's hip pain and whether she purposely disregarded or failed to adequately treat it (either by properly diagnosing him or writing him appropriate Consult Requests) are intertwined with Defendant Ferra's contribution to his injury. As the Magistrate Judge noted, failure to promptly and adequately treat severe pain can constitute deliberate indifference. (Doc. 75, p. 12.); See also McElligott v. Foley, 182 F.3d 1248, 1256–57 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with

---

[7] In fact, the record raises additional questions as to whether this "disagreement over terminology" led to Plaintiff receiving improper medical care. In response to Defendant Ferra's November 4, 2014 "back pain" Consult Request, Plaintiff was scheduled to see a neurosurgeon rather than a hip specialist. (Neurosurgery is "the medical specialty concerned with . . . the entire nervous system; including the spinal column, spinal cord, brain and peripheral nerves.") Patient Information, American Association of Neurological Surgeons, http://www.aans.org/en/Patients (last visited Jan. 23, 2018). Whether this was truly an error on the part of Utilization Management or due to Defendant Ferra's purported refusal to diagnose Plaintiff for hip pain is a question for a jury to decide.

knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."); Harris v. Coweta Cty., 21 F.3d, 388, 394 (11th Cir. 1994) ("[T]he right to medical care may include diagnostic tests known to be necessary, not just medicinal and surgical care.").

## CONCLUSION

The Court **OVERRULES** Defendants Broome and Ferra's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation, as supplemented herein, as the opinion of the Court. Accordingly, the Court **DISMISSES AS MOOT IN PART** and **DENIES IN PART** Defendants' Motions for Summary Judgment. (Docs. 64, 68.) Specifically, the Court **DISMISSES AS MOOT** all portions of Defendants' Motions addressing Plaintiff's requests for injunctive relief and **DENIES** all other portions. Furthermore, given the mootness of Plaintiff's claims for injunctive relief, the Court **DISMISSES** those claims **WITHOUT PREJUDICE.**

**SO ORDERED**, this 6th day of March, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

9